**In the Interest of E.H., Juvenile.**

**No. 65092.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 16, 1994.

Rehearing Denied Oct. 24, 1994.

Christine R. Sullivan, St. Louis, for appellant.

Graham W. LaBeaume, St. Louis, for respondent.

AHRENS, Judge.

E.H., a juvenile, appeals from an order of the Family Court—Juvenile Division of the Circuit Court of the City of St. Louis,[1] awarding the care, custody and control of juvenile to the Division of Youth Services for appropriate placement. We affirm.

On July 9, 1993, the court found that the juvenile committed the offense of stealing in violation of § 570.030.1 RSMo. The court assumed jurisdiction over juvenile pursuant to § 211.031.1(2)(d) and (3). Following a hearing, the juvenile commissioner recommended in part that: the care, custody and control of juvenile be given to the Division of Youth Services (DYS); the order be held in abeyance; juvenile be placed under official court supervision in the home of his father; and juvenile meet weekly with an assigned deputy juvenile officer. The findings and recommendations of the commissioner were adopted and confirmed as the judgment of the court by a typewritten order which bears the rubber stamped signature of the juvenile division judge, the Hon. James J. Gallagher. On the same day, juvenile and his parents signed a supervision contract, which included a requirement of weekly appointments with the deputy juvenile officer.

Following a report of violation, and after a hearing on the juvenile officer's motion to modify the order of disposition, the court found that juvenile failed to meet with his duly assigned juvenile officer for regularly scheduled office appointments from July 29, 1993, through August 30, 1993. The court modified its previous order of disposition to provide that the care, custody and control of juvenile be given to DYS for appropriate placement. The court further found that reasonable efforts had been made to retain the child in the home but the child had failed to alter his behavior and continued to violate

1. During the course of these proceedings, the Juvenile Division became the Family Court—Juvenile Division, pursuant to Ch. 487 RSMo Supp. 1993. We refer to both in this opinion as "the court."

the law, after having been placed on official court supervision. Following denial of a motion for rehearing, juvenile filed this appeal.

In his first point, juvenile claims the trial court erred in finding he violated his probation, since no valid order of probation exists. Specifically, juvenile contends the recommendations of the commissioner cannot be considered to be adopted and confirmed by a circuit judge, as required by § 211.029 RSMo 1986, since only the judge's signature stamp appears on the order of disposition of July 9, 1993. We disagree.

The judge testified on November 4, 1992, at the motion to modify hearing. He sometimes signed judgments and occasionally personally used a stamp of his signature on some judgments. The judge had no specific recollection whether he used the stamp on the contested judgment. Accordingly, there is evidence to support a finding the judge personally entered the contested judgment by using the facsimile signature stamp. It is not necessary for us to decide on these facts whether a court must personally affix a signature, its own or a facsimile, to a judgment *when deciding the merits* of a dispute. Nor is it necessary to decide whether the requirement would be the same for procedural rulings as for orders or judgments which decide substantive matters. We find the order of July 9, 1993, to be valid. Point denied.

In his second point, juvenile claims the trial court erred in finding juvenile violated his probation by failing to meet with his juvenile officer because no evidence was offered that juvenile had notice or knowledge of the dates he was scheduled to meet with the juvenile officer. We disagree.

Our review is limited to determining whether the court's finding that juvenile failed to meet with his duly assigned juvenile officer for his regularly scheduled office appointments from July 29, 1993, through August 30, 1993 was proved by clear and convincing evidence. Rule 117.05(b). The findings and recommendations of the commissioner and court order of July 9, 1993, recite that the juvenile, the juvenile's custodians, W.H. and R.B., and the attorney for the juvenile, John Rogers, all appeared at the hearing when the requirement of weekly meetings with the deputy juvenile officer was ordered. Also in the record is a supervision contract dated July 9, 1993, signed by juvenile, his custodians, and a deputy juvenile officer. By that contract, juvenile agreed to keep weekly appointments with a deputy juvenile officer. The deputy juvenile officer, Myron Alexander, testified that he talked with juvenile's father about juvenile meeting with Alexander once a week on Wednesdays, and sent a non-first class mail letter to juvenile's father concerning an appointment on July 15. Alexander further testified that juvenile did not make any of his visits with Alexander in July or August, 1993, and did not attempt to contact Alexander. Juvenile's father, W.H., testified that when juvenile started staying with him, juvenile stayed for one night and sneaked out of the house without asking permission to leave. W.H. testified further that juvenile was gone about three weeks in August, and W.H. did not know where he went.

Juvenile complains he had no notice or knowledge of appointments. However, knowing of his court-ordered obligation and his written agreement to keep weekly appointments with his juvenile officer, juvenile left his father's house without permission for three weeks, and did not contact his father or the juvenile officer. By his actions, juvenile effectively frustrated communication between juvenile, his father and the juvenile office. As a result, he did not receive the communications as to his appointments. Under these circumstances, the finding of the commissioner, as adopted and confirmed by the trial court, that juvenile failed to meet with his duly assigned juvenile officer for regularly scheduled office appointments, is supported by clear and convincing evidence. Point denied.

In his final point, juvenile contends the trial court erred in ordering his care, custody and control be given to DYS because the deputy juvenile officer failed to show that suitable community based treatment service did not exist or that it was proven ineffective, as required by § 219.021.1. We disagree.

As previously noted, juvenile's father, W.H., testified that juvenile sneaked out of

the house without asking permission to leave, was gone about three weeks in August, and W.H. did not know where juvenile went. Further, juvenile missed meetings with his juvenile officer from July 29, 1993, through August 30, 1993. At the disposition hearing, deputy juvenile officer Alexander described juvenile as a "kid that won't follow rules and regulations and did not abide by the rules of supervision while he was on supervision with the court and, basically, does what he wants; hangs out in the streets all night and won't come home." Alexander further testified that juvenile's father and mother could not control him. Alexander stated that he believed juvenile needed a more structured environment where he can get an education and counseling to help him with his behavior. He knew of no private facility that would consider placement of juvenile. Alexander contacted two facilities, Echo and Father Dunne's. Neither would accept a child who is a runaway and refuses to follow rules and regulations. No relatives offered to take custody of juvenile. Juvenile officer Alexander recommended that juvenile be placed in the care, custody and control of DYS for appropriate placement. When counsel for juvenile objected, the commissioner asked counsel if there was a proposed alternative to the juvenile officer's recommendation. Counsel offered no alternative.

We believe this record contains clear and convincing evidence which meets the statutory requirement of § 219.021.1 that suitable community based treatment service did not exist or that it was proven ineffective. Point denied.

Judgment affirmed.

SIMON, J., concurs.

KAROHL, J., concurs in part and dissents in part in separate opinion.

KAROHL, Judge, concurring in part and dissenting in part.

This case involves the welfare of E.H., the fourteen year-old son of W.H. and R.B. E.H. preserved and argued two errors: (1) the court had no jurisdiction to modify a previous order which placed him under court supervision because the order was not entered by a judge; and, (2) the allegation he violated a term of the Rules of Supervision required by the contested prior order was not proven. As a matter of fact, I concur in the opinion which holds the previous order was legally binding. As a matter of law, I dissent on the second point because the court erred in ruling a violation was proven.

The original judgment was entered on July 9, 1993, in a case where the juvenile and his parents "admitted to the allegations contained in the pleadings" which supported the judgment to assume jurisdiction. The court found it had jurisdiction under § 211.031.1(2)(d) and (3) RSMo 1986. The court placed E.H. under court supervision. It committed him to the custody of the Missouri Division of Youth Services. The commitment was "held in abeyance and the youth placed under Official Court Supervision in the home of father, [W.H.]." The court ordered "the youth [to] meet weekly with assigned Deputy Juvenile Officer."

On the same day as the judgment, E.H. and his parents signed a Supervision Contract. It described five general conditions and three special conditions. Special condition number three reads:

(3) *DJO appointments:* REQUIRED FREQUENCY *weekly.*

On October 6, 1993, a juvenile officer, not the deputy juvenile officer who participated in the July 9, 1993 proceedings, filed a motion to modify the July 9, 1993 judgment. The motion alleged only one ground, a violation of a criminal statute. This was a violation of a general condition, not a violation of special condition three. The charge was withdrawn and not tried.

The hearing involved two charges alleged in a second amended motion. They were part of paragraph 2.(a):

(1) That the Juvenile, in the City of St. Louis, State of Missouri, did fail to meet with his duly assigned Deputy Juvenile Officer for his regularly scheduled office appointments from July 29, 1993, through August 30, 1993.

(2) That the Juvenile did willfully and knowingly absent himself from his court-ordered placement in the home of [R.B.],

his mother, without the permission or consent of his mother or of the Court and without his ~~mother~~ or the court's knowledge of his whereabouts from approximately August 9 to 30, 1993. (Mother was lined out and "Father" written on margin.)

The Juvenile Court Commissioner ruled there was no proof of the second allegation. The sufficiency of proof issue deals only with failure to meet a DJO at regularly scheduled office appointments.

E.H. correctly argues there was no proof that he "had any notice or knowledge of the dates/day he was scheduled to meet with the DJO." This is his point on appeal. There is absolutely no evidence the DJO and E.H. had a scheduled appointment to meet. The division opinion does not describe an appointment. The insufficiency of evidence prevents any description of a scheduled appointment. At most, there was evidence the DJO decided to schedule a weekly meeting, on Wednesdays, but there was no evidence the DJO informed E.H. of this decision. Two "missed" meeting were not on Wednesdays, they were Thursdays. The evidence would support a finding that any meeting planned by the DJO was a well kept secret not shared with E.H.

Accordingly, for failure to notify E.H. there could not have been an appointment for E.H. to miss and no evidence to support the finding he breached a special condition to "meet weekly." He was not empowered to fix the day, time or place of a meeting. The DJO assumed a burden to prove by clear and convincing evidence the specific allegations in paragraph 2.(a)(1) of the Motion to Modify. Rule 117.05(b). As a matter of simple fairness and logic, E.H. was entitled to notice of a proposed meeting before it could be treated as a scheduled appointment. The DJO had the burden of proving there was an appointment as a condition to proving a violation of a special condition which was written in general and indefinite terms of "weekly meetings." A weekly meeting is not automatically a regularly scheduled appointment. The special condition did not mention or define a "regularly scheduled office appointment." What may have been easily done, was never done.

The motion to modify did not plead failure to honor the requirement of weekly meetings. The DJO alleged and chose to assume the heavier burden of proving what the commissioner found, failure "to meet with his duly assigned Juvenile Officer for his *regularly scheduled* office *appointments* from July 29, 1993 through August 30, 1993." (Our emphasis).

The only evidence on the issue was in the testimony of the deputy juvenile officer. Some of the testimony is summarized and some quoted:

> [E.H.] was to meet with me once a week; he did not make any visits in July of 1993; he did not call to reschedule; he did not attempt to contact me; he was supposed to meet with me July 29 [we notice that was a Thursday]; he was supposed to meet with me on July 15 [we also notice that was a Thursday]:
>
> \* \* \* \* \* \*
>
> Q. You have a record in your file that indicates that he was supposed to meet with you on July 15?
> A. Yes. I have an appointment letter.
> Q. And who was that mailed to?
> A. It was mailed to his father.
>
> \* \* \* \* \* \*
>
> The letter was not mailed first class mail; E.H. did not make any visits in August of 1993; he was supposed to meet once a week, "Every Wednesday in August, the first day of the week";
>
> \* \* \* \* \* \*
>
> Q. Do you have any information in your file that tells you [E.H.'s] knowledge of that he is suppose to meet with you on Wednesday?
> A. Yes.
> Q. And what is that?
> A. I talked to his father.

The DJO did not offer the "appointment letter" for July 15, 1993, in evidence. The only specific dates referred to by the DJO, July 15, and July 29, 1993, were not Wednesdays and Wednesday is not the first day of the week. The DJO did not testify as to what she told the father. E.H.'s father was a

witness on another matter. He was not asked whether he received a letter from the DJO regarding an appointment or that he ever discussed a DJO appointment with E.H.

The Commissioner found proof beyond a reasonable doubt that E.H. failed to meet "for his regularly scheduled office appointments from July 29, 1993 through August 30, 1993." This finding, adopted by the juvenile court, is wholly unsupported by any evidence. All the evidence on the issue has been set forth and included. It is patently insufficient to support an order placing the juvenile in institutional care.

The failure of proof is obvious for a number of reasons. First, the evidence will not support a finding an appointment was ever established. The special condition to meet weekly was meaningful only after the DJO scheduled a meeting on a fixed day and gave E.H. notice of time and place. No specifics were ever defined and made the subject of notice so as to support a finding that there was a scheduled appointment. Second, there is no evidence that an appointment was ever scheduled in the sense that the DJO and E.H. established a schedule. Third, there is no evidence to support a finding that the DJO informed E.H.'s father of the specifics of an appointment, unless merely selecting a day of the week for a "weekly meeting" is sufficient. It isn't. The time and place of the "appointment" was never mentioned. Fourth, the most critical failure of proof, there is no reference to notice to E.H. of anything about day of week or time of day or location.

This court is restricted to reviewing the preserved legal issue, sufficiency of proof. It is not our function to determine practical issues of how an appointment could have been established and what could have been proven. There was no proof of the only alleged violation, failure by E.H. to keep a regularly scheduled office appointment. There were no other pleaded and proven grounds to justify determining a violation of general or special conditions. The judgment of November 16, 1993 should be reversed.